IN UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LUCILLE GONCALVES,

           Plaintiff,

v.                                                    Case No. 5:22-cv-183

HEALTHCARE MANAGEMENT
GREYSTONE CORP. d/b/a THE
GROVE HEALTH AND
REHABILITATION CENTER, a Foreign
Profit Corporation, and
CITRUS HILLS NH LLC d/b/a THE
GROVE HEALTH AND
REHABILITATION CENTER,
A Foreign Limited Liability Company

           Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff LUCILLE GONCALVES ("Plaintiff" or "Goncalves") sues Defendant, GREYSTONE HEALTHCARE MANAGEMENT CORP. d/b/a THE GROVE HEALTH AND REHABILITATION CENTER and CITRUS HILLS NH LLC d/b/a THE GROVE HEALTH AND REHABILITATION CENTER (collectively "Defendants" or "the Grove"), and states as follows:

## CAUSES OF ACTION

1.     This is an action brought against Defendants for unlawful discrimination and retaliation practices under Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and 42 U.S.C. § 1981. The action seeks declaratory, injunctive, and other equitable relief as well as monetary damages, costs, and attorney's fees.

## PARTIES

2.      Plaintiff Lucille Goncalves is an individual and resident of Florida who resides in Citrus County, Florida.  At all material times, Goncalves was employed by Defendants, Greystone Healthcare Management Corp. d/b/a The Grove Health and Rehabilitation Center as a Certified Nursing Assistant (CNA). Goncalves performed work for the Defendant in Citrus County, Florida, and was also required to provide additional duties aside from that of a CNA.

3.      Defendant Greystone Healthcare Management Corp. is a Delaware corporation. Defendant Citrus Hills NH LLC is a Delaware limited liability company. Both entities do business as The Grove Health and Rehabilitation Center, formerly known as Citrus Hills Health & Rehabilitation Center, and are collectively referred to throughout this Complaint as "Defendants" or "The Grove". The Grove Health and Rehabilitation Center is a long-term skilled nursing care and short-term rehabilitation center.

## JURISDICTION AND VENUE

4.      Subject matter Jurisdiction is proper in this Court under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims per 42 U.S.C. § 1367 as the Florida Civil Rights Act claims are so related to the federal claims that they form part of the same case or controversy.

5.      Personal jurisdiction and venue are proper in the United States District Court for the Middle District of Florida because at all times material, Defendants resided in and/or conducted business in, and significant events giving rise to Plaintiff's

claims occurred within the Florida counties comprising the U.S. District Court, Middle District of Florida.

6.     Venue is proper in the Ocala Division under Local Rule 1.04 since the action accrued in Citrus County, Florida over which the Ocala Division has jurisdiction.

7.     All conditions precedent to maintaining this action have occurred, been performed, are excused, and/or have been waived.

## STATUTORY COVERAGE AND ELIGIBILITY

8.     At all times material, Defendants were an "employer" within the meaning of Fla. Stat. § 760.02(7) and 42 U.S.C. § 2000e who had fifteen (15) or more employees in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

9.     At all times material, Defendant was subject to the proscriptions against race, national origin, and color discrimination as well as retaliation under 42 U.S.C. § 1981.

10.     On or around May 5, 2020, Plaintiff filed a charge of discrimination and retaliation which is attached to this Complaint as Exhibit A. At the request of the Equal Employment Opportunity Commission (EEOC), on May 7, 2020, Plaintiff filed two identical charges, one for each of the Defendant entities, attached hereto as Composite Exhibit B. The Charges were filed with the EEOC and deemed dual filed with the Florida Commission on Human Relations (FCHR). The FCHR failed to

CALCIANO PIERRO, PLLC

make any determination within 180 days of the filing date. The EEOC issued its Dismissal and Right to Sue letters on January 12, 2022.

## GENERAL ALLEGATIONS

11.     On or around March 30, 2009, Plaintiff became employed with The Grove as a Certified Nursing Assistant ("CNA").

12.     Beginning on or around August 2015, Plaintiff's position fluctuated between CNA, restorative aid, and concierge.

13.     Plaintiff is a black female born in Haiti.

14.     The Grove has a systemic pattern and practice of issuing disparate discipline to African American employees and treating similarly situated white employees more favorably.

15.     On or around June 23, 2015, Ms. Angie Watts, an employee of The Grove, approached Plaintiff about tardiness and stated that she may write up Plaintiff for this. Plaintiff indicated that, if she was written up for tardiness, The Grove would need to write up similarly situated white females who were more frequently tardy and whose habitual tardiness was known to management. Plaintiff was led to believe that the matter was dropped and therefore did not escalate it to HR. However, during the EEOC investigation in this matter, it was discovered that The Grove placed an Employee Counseling Form in Plaintiff's personnel file writing her up for tardiness and falsely claiming that Plaintiff "Refused to Sign" the form that was never presented to her. Notably, Plaintiff's white female comparators continued to show up tardy for years on a regular basis and were never reprimanded. Tardiness was a ubiquitous issue

4

with numerous employees at The Grove, to the point where the company raffled off a 55" inch television to employees who had no tardies or absences in a 90-day period, but The Grove has a pattern and practice of applying disparate disciplinary rules to African American employees.

16.     On or around January 12, 2017, a maintenance manager named Clarence "Eddie" Corbitt commented "are we off on nigger day" (referring to Martin Luther King Jr. Day) in front of multiple employees.

17.     On January 17, 2017, Plaintiff complained to Eileen Bates in Human Resources that the black employees were deeply upset about Mr. Corbitt's comment, which was repeated to several other employees. In response, Plaintiff was told "you don't want to do that because then the management will start looking into what you [Plaintiff] have said or done," clearly signaling that Plaintiff would be retaliated against for complaining about the extremely offensive comment. Plaintiff stated that this would be retaliation, and Ms. Bates said nothing in response.

18.     On or around January 20, 2017, Plaintiff took the matter to Executive Director Brandy Felicita to let her know what had transpired and that she intended to take the matter up with corporate HR. Plaintiff was told the company was handling the matter, however their way of handling it was to suspend Mr. Corbitt for a day and then let him make up the day on a Saturday (Mr. Corbitt was an hourly employee).

19.     Plaintiff brought the complaint to Terri Sessions in Corporate HR on behalf of herself and others. When Plaintiff met with Corporate HR, they explained that no one from The Grove had informed them what had happened. Although the

company ultimately fired Mr. Corbitt about two weeks after he made the discriminatory comment, Plaintiff immediately started experiencing harassment and retaliation at The Grove that continued throughout her employment. The company has routine practice of writing staff up after they make complaints. This is how they handle employee complaints—they issue sham disciplinary warnings to silence employee concerns. This goes hand in hand with the practice of assigning duties and applying in a discriminatory manner.

20.    For example, African American employees were reprimanded for bringing their children to work when white employees were able to do so without discipline. When this occurred and Plaintiff complained to the Director of Nursing at the time, she was told that there was a new company policy about bringing children to work. However, the company continued to allow white employees to bring their children to work. Moreover, when Plaintiff brought her two grandchildren to work with her, Plaintiff was instructed by the Director of Nursing to immediately remove them from the building. For several months after this, The Grove continued to permit white employees to bring their children to work.

21.    By way of another example, when Plaintiff took Family and Medical Leave Act (FMLA) leave in 2017, she was not reinstated back to her position after three weeks. However, the company routinely reinstates white employees back to work under FMLA when they were absent for more than the 12 workweeks covered under the FMLA. The Company further allows white employees to take FMLA leave to care for unmarried partners but does not extend the same protection to African

American employees. Plaintiff complained about this practice repeatedly to Eileen Bates in HR, noting that the Grove applied different rules based on what appeared to be race.

22.    There was another incident, on or around April 5, 2017, where three staff members of The Grove—two staffing coordinators and the weekend supervisor—attempted to require Plaintiff to make up hours associated with a protected FMLA absence. When Plaintiff objected to this, she was written up for being "disruptive," which was later determined by Terri Sessions to be baseless, and the Plaintiff could not be written up for that. As a result, The Grove wrote up Plaintiff for the pretextual reason of taping the conversation that had happened even though the recording was done conspicuously with the implied consent of all involved.

23.    On or around September 28, 2017, Plaintiff's coworker, Head RN Lisa Smith, made a highly offensive comment about how all black people look alike. Plaintiff complained to Eileen Bates in HR about this in writing the same day. Ms. Bates never responded to Plaintiff's complaint other than to state that she would set a time to speak with her, but that never happened.

24.    On or around June 17, 2019, Plaintiff fell and broke her toe on the job due to negligent conditions created by the company where pebbles would overflow into the ingress area after a heavy rain. This injury required urgent care. Plaintiff had a note from the doctor at this time prescribing transfer to a light-duty position due to the injury. The company told Plaintiff that they would not transfer her even though a light duty position was available. Plaintiff was written up the same day for parking in

the "wrong area" and using the "wrong entrance" to the building where white employees routinely parked and entered without discipline—the white employees would regularly walk through that entrance right in front of the management.

25.    Around the same time, The Grove wrote up Plaintiff for clocking in and parking her car while on the clock. There was only a single time clock for the entire building, and employees typically rushed to be able to clock in on time. Similarly situated white employees engaged in this practice with impunity on a regular basis. Plaintiff, during her employment, was told by The Grove she had to park in the back of the building simply because she had a Black Lives Matter sticker on her vehicle— The Grove wanted to conceal the sticker from the view of others by requiring her to park in the back, which is considerably farther away from the time clock near the front entrance.

26.    On or around July 31, 2019, Plaintiff complained to Bates in HR about the negligent conditions regarding slippery pebbles that also existed near the entrance Plaintiff was instructed to walk into. Other employees, including Kathy Miller (LPN), was injured near the same entrance due to those conditions. When Plaintiff threatened to complain to corporate HR, she was written up for pretextual reasons the next day, August 1, 2019. Specifically, on August 1, there were a total of five employees, including Ms. Goncalves, having an open conversation as normal amongst employees. These employees were talking about another African American employee named L. Campbell and how she was upset with a white employee, Robin Wheatley, concerning a work matter. Ms. Goncalves simply stated the fact that Kathy Hall would change

assignments and give Robin Wheatley an easy assignment while making Ms. Campbell work more difficult assignments. Ms. Goncalves was not rude or disrespectful—she was just stating the facts on how the staff make special accommodations for certain employees but not others, and an unfortunate fact is that this appear to be based on race. The Grove characterized Plaintiff's complaints as "disruptive" and creating a "toxic work environment." During the meeting concerning this write-up, the Director of Nursing, Lisa Streer, told Plaintiff to "stay in your lane" and "keep your opinions to yourself."

27.    On or around November 5, 2019, Plaintiff had a conversation where the Unit Manager, Donnalynn Benenhaby, agreed with Plaintiff that the local area where The Grove is located is a white supremacist organization that give privileged status to white employees and looks down on African Americans and other people of color. Plaintiff explained that she was going to complaint to corporate HR about the practice. On November 6, 2019, Plaintiff was written up in retaliation for making complaints.

28.    After November 6, 2019, Plaintiff continued to follow up with management regarding her complaints. Management continued to give her the run-around, assuring that there would be meetings that never ended up happening, and generally giving Plaintiff's complaints no substantive response or meaningful investigation.

29.    On or around November 7, 2019, Plaintiff filed a complaint with the company, to Terri Sessions' supervisor in corporate HR, concerning the culture of racism and retaliation, including that the company has a pattern and practice of

assigning more physically intensive labor to black employees than white employees. Sesssions' supervisor indicated that she was going to have a meeting with management personnel and Plaintiff concerning Plaintiff's complaint, but that never happened.

30.     Corporate HR, instead of setting up a meeting with Plaintiff and the management personnel, sent Ms. Sessions back to meet with Plaintiff again around December 2019, but Ms. Sessions did not understand why she was meeting with Plaintiff. Plaintiff expressed concerns to Ms. Sessions during this meeting about favortism, nepotism, and racism concerning, among other things, white employees being treated more favorably than black employees in terms of discipline and work assignments. Plaintiff complained that the majority of nurses give the black employees more and worse tasks than the similarly situated white employees. Other employees have complained about this exact problem before.

31.     On or around December 20, 2019, Plaintiff spoke with Terri Sessions via telephone. She assured Plaintiff once she came back from vacation that she would be setting up a meeting to review Plaintiff's concerns. This meeting never occurred, and no one ever followed up with Plaintiff about the issue.

32.     On January 28, 2020, Plaintiff was terminated by The Grove because of her protected class characteristics and complaints. The Grove reserves particularly harsh retaliation for those who complain or threaten to complain about matters to corporate HR (*e.g.*, Ms. Sessions, Ms. Evans) rather than locally through The Grove facility's HR (*e.g.*, Eileen Bates).

33.     During the EEOC investigation in this matter it was revealed that The Grove had a pattern and practice of forging employee signatures and otherwise fabricating disciplinary documents to place in Plaintiff's personnel file, as illustrated by the following examples:

a.   Exhibit 20 to The Grove's Position Statement, intended by The Grove to show that Plaintiff was reprimanded for legitimate, non-discriminatory, and non-retaliatory reasons, indicates it was issued by a supervisor named Colleen Bender. But Bender had resigned from The Grove in August or September of 2018—a fact known by Ms. Goncalves, but also apparent from Ms. Bender's own LinkedIn profile. Moreover, when comparing the signature on Exhibit 20 to the Ms. Bender's signature on Exhibit 13 (which was made in 2017, when she was actually employed), the signatures clearly belong to different individuals.

b. Regarding, Exhibit 25 to The Grove's Position Statement—a Compliance Training Attendance Log dated March 27, 2018 (page 86 of the Position Statement PDF)—it is apparent that The Grove wrote in Dawn Brooks name as the trainer after the fact. Dawn Brooks could not have been the trainer during that time period because she was a floor nurse and not a clinical education coordinator—she did not graduate to complete her RN degree until 2019. Ms. Brooks became the clinical educator in 2019 after Ms. Guzolik. Comparing the signatures of Dawn Brooks on April 19, June 12, June 17, and August 7, 2019 (from Exhibit 25 of the Position Statement) with other

CALCIANO PIERRO, PLLC

documents containing Ms. Brooks' signature, it is clear that someone else wrote in Ms. Brooks' name on the 2018 form during a time when Ms. Brooks was ineligible to train.

c.   Exhibit 12 to The Grove's Position Statement related to the incident on or around June 23, 2015, when Ms. Angie Watts, an employee of The Grove, approached Plaintiff about tardiness and stated that she may write up Plaintiff for this. Plaintiff indicated that, if she was written up for tardiness, The Grove would need to write up similarly situated white females who were more frequently tardy and whose habitual tardiness was known to management. Plaintiff was led to believe that the matter was dropped and therefore did not escalate it to HR. However, during the EEOC investigation in this matter, it was discovered that The Grove placed this Employee Counseling Form in Plaintiff's personnel file writing her up for tardiness and falsely claiming—twice on the form—that Plaintiff "Refused to Sign" the form that was never presented to her.

34.   Plaintiff has had to retain the undersigned counsel to bring the instant action and will incur attorney's fees for said representation.

## COUNT I - DISCRIMINATION
### *(Title VII of the Civil Rights Act of 1964)*

35.   Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations in paragraphs 1 through 34.

36.   Plaintiff was qualified to perform in her employment position at all material times.

37.   Plaintiff is a member of a protected class and was subjected to discrimination based on her race, color, and/or national origin.

38.   Plaintiff was subjected to discrimination when she was disciplined and terminated by Defendant for a pretextual reason.

39.   Plaintiff was subjected to discriminatory hostile work environment based on her race, color, and/or national origin by virtue of the acts to forth in the facts common to all counts.

40.   The aforestated acts and omissions by The Grove constituted unlawful discrimination based on Plaintiff's protected class status in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

41.   The Grove's managerial agent(s) approved the discriminatory termination of Plaintiff.

42.   The Grove's agent(s) responsible for disciplining and terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

43.   Plaintiff's discriminatory treatment by The Grove was done with malice or reckless indifference to Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964.

44.   As a direct, natural, proximate, and foreseeable result of the aforestated acts of The Grove, Plaintiff has suffered lost wages, pay and future benefits, emotional

CALCIANO PIERRO, PLLC

damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT II - RETALIATION
### (*Title VII of the Civil Rights Act of 1964*)

45.    Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations in paragraphs 1 through 44.

46.    Plaintiff engaged in numerous complaints concerning her discriminatory treatment as described in the facts common to all counts. Plaintiff's complaints concerning discriminatory treatment amounted to protected activity under Title VII of the Civil Rights Act of 1964.

47.    Plaintiff suffered an adverse employment action when she was disciplined and terminated from her employment for pretextual reasons.

48.    Plaintiff was subjected to a hostile work environment based on complaints of discrimination by virtue of the acts to forth in the facts common to all counts.

49.    The aforestated acts of Defendant constituted unlawful retaliation based on Plaintiff's protected activity in violation of Title VII of the Civil Rights Act of 1964.

CALCIANO PIERRO, PLLC

50.     The Grove's managerial agent(s) approved the retaliatory treatment against Plaintiff.

51.     The Grove's agent(s) responsible for disciplining and terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

52.     The Grove's adverse and retaliatory acts taken against Plaintiff were done with malice or reckless indifference to Plaintiff's civil rights under Title VII.

53.     As a direct, natural, proximate, and foreseeable result of the aforestated acts of The Grove, Plaintiff has suffered lost wages, pay and future benefits, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT III - DISCRIMINATION
### *(42 U.S.C § 1981)*

54.     Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations in paragraphs 1 through 34.

55.     Plaintiff was qualified to perform in her employment position at all material times.

56.     Plaintiff is a member of a protected class and was subjected to discrimination based on her race, color, and/or national origin.

57.     Plaintiff was further subjected to discrimination when she was disciplined and terminated by The Grove's for a pretextual reason.

58.     Plaintiff was subjected to discriminatory hostile work environment based on her race, color, and/or national origin by virtue of the acts to forth in the facts common to all counts.

59.     The aforestated acts and omissions by The Grove constituted unlawful discrimination based on Plaintiff's protected class status in violation of 42 U.S.C. § 1981.

60.     The Grove's managerial agent(s) approved the discriminatory termination of Plaintiff.

61.     The Grove's agent(s) responsible for terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

62.     Plaintiff's discriminatory treatment by The Grove was done with malice or reckless indifference to Plaintiff's civil rights under 42 U.S.C. § 1981.

63.     As a direct, natural, proximate, and foreseeable result of the aforestated acts of The Grove, Plaintiff has suffered lost wages, pay and future benefits, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress

damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT IV - RETALIATION
### *(42 U.S.C § 1981)*

64.     Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations in paragraphs 1 through 34 and 54 through 63.

65.     Plaintiff was qualified to perform in her employment position at all material times.

66.     Plaintiff engaged in numerous complaints concerning her discriminatory treatment as described in the facts common to all counts. Plaintiff's complaints concerning discriminatory treatment amounted to protected activity under 42 U.S.C. § 1981.

67.     Plaintiff suffered an adverse employment action when she was disciplined and terminated from her employment for pretextual reasons.

68.     Plaintiff was subjected to a hostile work environment based on complaints of discrimination by virtue of the acts to forth in the facts common to all counts.

69.     The aforestated acts of Defendant constituted unlawful retaliation based on Plaintiff's protected activity in violation of 42 U.S.C. § 1981.

70.     The Grove's managerial agent(s) approved the retaliatory treatment against Plaintiff.

71.     The Grove's agent(s) responsible for disciplining and terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

72.     The Grove's adverse and retaliatory acts taken against Plaintiff were done with malice or reckless indifference to Plaintiff's civil rights under 42 U.S.C. § 1981.

73.     As a direct, natural, proximate, and foreseeable result of the aforestated acts of Defendant, Plaintiff has suffered lost wages, pay and future benefits, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT V - DISCRIMINATION
### *(Florida Civil Rights Act)*

74.     Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations in paragraphs 1 through 34.

75.     Plaintiff was qualified to perform in her employment position at all material times.

CALCIANO PIERRO, PLLC

76.     Plaintiff is a member of a protected class and was subjected to discrimination based on her race, color, and/or national origin.

77.     Plaintiff was further subjected to discrimination when she was disciplined and terminated by The Grove's for a pretextual reason.

78.     Plaintiff was subjected to discriminatory hostile work environment based on her race, color, and/or national origin by virtue of the acts to forth in the facts common to all counts.

79.     The aforestated acts and omissions by The Grove constituted unlawful discrimination based on Plaintiff's protected class status in violation of Florida Civil Rights Act, Ch. 760 Florida Statutes.

80.     The Grove's managerial agent(s) approved the discriminatory termination of Plaintiff.

81.     The Grove's agent(s) responsible for terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

82.     Plaintiff's discriminatory treatment by The Grove was done with malice or reckless indifference to Plaintiff's civil rights under the Florida Civil Rights Act, Ch. 760 Florida Statutes.

83.     As a direct, natural, proximate, and foreseeable result of the aforestated acts of Defendant, Plaintiff has suffered lost wages, pay and future benefits, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

### COUNT VI - RETALIATION
*(Florida Civil Rights Act)*

84.    Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations in paragraphs 1 through 34 and 74 through 83.

85.    Plaintiff engaged in numerous complaints concerning her discriminatory treatment as described in the facts common to all counts. Plaintiff's complaints concerning discriminatory treatment amounted to protected activity under T Florida Civil Rights Act, Ch. 760 Florida Statutes.

86.    Plaintiff suffered an adverse employment action when she was disciplined and terminated from her employment for pretextual reasons.

87.    Plaintiff was subjected to a hostile work environment based on complaints of discrimination by virtue of the acts to forth in the facts common to all counts.

88.    The aforestated acts of Defendant constituted unlawful retaliation based on Plaintiff's protected activity in violation of Florida Civil Rights Act, Ch. 760 Florida Statutes.

89.     The Grove's managerial agent(s) approved the retaliatory treatment against Plaintiff.

90.     The Grove's agent(s) responsible for disciplining and terminating Plaintiff were employed in a managerial capacity and acting in the scope of employment.

91.     The Grove's adverse and retaliatory acts taken against Plaintiff were done with malice or reckless indifference to Plaintiff's civil rights under Florida Civil Rights Act, Ch. 760 Florida Statutes.

92.     As a direct, natural, proximate, and foreseeable result of the aforestated acts of Defendant, Plaintiff has suffered lost wages, pay and future benefits, emotional damages, loss of dignity, loss of enjoyment of life, mental anguish, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, attorney's fees and court costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, a demand a trial by jury as to all issues triable as of right.

CALCIANO PIERRO, PLLC

Dated this 11th day of April 2022.         Respectfully submitted,

                                           *s/ Brian Calciano*
                                           _____
                                           BRIAN K. CALCIANO
                                           Florida Bar No. 10887
                                           *Trial Counsel for Plaintiff*

                                           **CALCIANO PIERRO, PLLC**
                                           146 Second Street North – Suite 304
                                           St. Petersburg, Florida 33701
                                           (727) 201-2573 | (727) 491-7072 – Fax
                                           brian@flemploymentlaw.com